UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:11-CR-4 JD |
| | ) |
| JESSE LEE DANIELS, SR. and | ) |
| LOREN HANSON | ) |

**OPINION AND ORDER**

On April 13, 2011, the defendants Jesse Lee Daniels, Sr., and Loren Hanson were charged, in a superseding indictment, with a conspiracy and two underlying substantive offenses. Specifically, the indictment charged the defendants with Count One, conspiring to embezzle funds from USW Local 1011, of which Hanson was President and Daniels was Financial Secretary, in violation of 18 U.S.C. § 371; Count Two, embezzling Local 1011 funds to Daniels's use in violation of 29 U.S.C. § 501(c); and Count Three, embezzling Local 1011 funds to Hanson's use in violation of the same. [DE 16]. Both defendants pleaded not guilty, and on January 30, 2012, a joint trial by jury commenced.

At the close of the government's evidence, both Hanson and Daniels moved for judgments of acquittal on all counts. Hanson argued that the government had failed to carry its evidentiary burden to the extent that no rational jury could find him guilty on the evidence heard. Daniels concurred with respect to his own case. Both argued, with some slight variation, that all of the evidence available indicated that any overpayments were the result of mistake or negligence, and not an intent to defraud. The government responded by summarizing the evidence upon which a rational jury could return a verdict of guilty. The court took the defendants' motions under

1

advisement, and now resolves those motions with respect to each count charged in the indictment against each defendant.

## DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When a defendant moves for judgment of acquittal pursuant to Rule 29, the question the court must ask is whether evidence exists from which any rational trier of fact could find the "essential elements" of the crime beyond a reasonable doubt. *United States v. Hatch*, 162 F.3d 937, 942 (7th Cir. 1998); *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir. 1978) (discussing with approval the Fifth Circuit rule that a motion for judgment of acquittal "must be granted when the evidence ... is so scant that the jury could only speculate as to the defendant's guilt, and is such that a reasonably-minded jury *must* have a reasonable doubt as to the defendant's guilt.") (emphasis added) (citing *United States v. Herbernman*, 583 F.2d 222 (5th Cir. 1978); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973)). The movant "faces a nearly insurmountable hurdle [because courts] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999), *cert. denied*, *Fuller v. United States*, 529 U.S. 1138 (2000) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)).

In short, if after viewing the evidence in the light most favorable to the prosecution, the court *does* believe that a rational trier of fact could find the essential elements of the crime beyond a

2

reasonable doubt, the motion must be denied. *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir.1997). If, on the other hand, the record is devoid of evidence from which a jury could find guilt, the motion must be granted. Fed. R. Crim. P. 29; *Pulido*, 69 F.3d at 205-06. Accordingly, the court addresses the evidence presented with respect to the essential elements of each crime charged against each defendant.

**A.     COUNT ONE: Charging Jesse Lee Daniels, Sr., with Conspiracy.**

Count One charges the defendants with knowingly and wilfully conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371. Specifically, the count charges the defendants with conspiring together to embezzle union funds to Hanson's use [DE 16 (Count One 1(A))], and with conspiring together to embezzle funds to Daniels's use [DE 16 (Count One 1(B))]. To find Daniels guilty of Count One, the jury would have to find the following beyond a reasonable doubt:

> (1) that Daniels agreed with Hanson and their co-conspirators to embezzle, steal, or unlawfully and willfully abstract or convert approximately $21,450 in union funds to Hanson's use and approximately $19,500 in union funds to Daniels's use;[1]
> (2) that at least one conspirator actually performed one or more overt acts in furtherance of that illegal objective; and
> (3) that this was done with the intent to commit the substantive offense, which is the embezzlement of union funds.[2]

The court must determine whether, viewing the evidence in the light most favorable to the

---

[1] "It is fundamental that a conviction for conspiracy under 18 U.S.C. § 371, 18 U.S.C.A. § 371, cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.'" *Ingram v. United States*, 360 U.S. 672, 677-78 (1959) (quoting *Pereira v. United States*, 347 U.S. 1, 12 (1954)).

[2] More specifically, "'conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.'" *Ingram*, 360 U.S. at 678 (quoting Developments in the Law – Criminal Conspiracy, 72 Harv. L. Rev. 920, at 939 (collecting authorities). The "degree of criminal intent" necessary to commit the substantive offense in this case – a violation of 29 U.S.C. § 501(c) – is "intent to defraud." Thus, a failure by the government to prove either defendant's "intent to defraud" with respect to the substantive offense also precludes a conviction for conspiracy pursuant to 18 U.S.C. § 371.

prosecution, a rational jury could find beyond a reasonable doubt that each of the foregoing essential elements of a violation of 18 U.S.C. § 371 was present with respect to Daniels.

At the outset, the court notes that it finds in this order that a rational jury could return a verdict of guilty as to Daniels on the two substantive offenses underlying the conspiracy charge. *See* Sections C and E, *infra*. Thus, the level of criminal intent necessary to support the conspiracy charge has been demonstrated sufficiently to withstand a Rule 29 motion. The remaining questions are whether the government has produced sufficient evidence of an agreement and of an overt act to convince a rational jury of Daniels's guilt beyond a reasonable doubt.

The government introduced evidence that, out of 81 local union officers, only Daniels and Hanson were paid in excess of the rates authorized by the 2005 rate sheets. As discussed in more detail below, the evidence could support the conclusion that Daniels and Hanson each knew they were being paid in excess of the rate sheets, and that they each knew the other was being paid in excess of the rate sheets. Further, United States Department of Labor Agent John Legan testified that Daniels told him he discussed the pay issue with Hanson while nobody else was present, and both the local union bylaws and the testimony of various union executives could support the conclusion that Hanson and Daniels exercised the most control, relative to other officers, over union financial records and procedures. Finally, former union trustee Ken Matusiak testified that both Hanson and Daniels, among others, made it difficult for him to gain access to local union financial records when he wanted to conduct an internal audit.

Based on the foregoing, it would not be irrational for a jury to conclude beyond a reasonable doubt that Daniels and Hanson agreed with each other to work toward a common purpose of fraudulently overpaying themselves in excess of their authorized salary rates. Nor would it be

4

remotely irrational for a jury to conclude beyond a reasonable doubt that either Hanson or Daniels performed an overt act in furtherance of that objective, given that the documentary evidence demonstrated that each personally signed many of the allegedly fraudulent paychecks to the other. Daniels's motion for judgment of acquittal is **DENIED** with respect to Count One.

**B.     COUNT ONE: Charging Loren Hanson with Conspiracy.**

As mentioned, Count One charges the defendants with knowingly and wilfully conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371. The count charges the defendants with conspiring together to embezzle union funds to Hanson's use and with conspiring together to embezzle funds to Daniels's use. To find Hanson guilty of Count One, the jury would have to find the following beyond a reasonable doubt:

> (1) that Hanson agreed with Daniels and their co-conspirators to embezzle, steal, or unlawfully and willfully abstract or convert approximately $21,450 in union funds to Hanson's use and approximately $19,500 in union funds to Daniels's use;
> (2) that at least one conspirator actually performed one or more overt acts in furtherance of that illegal objective; and
> (3) that this was done with the intent to commit the substantive offense, which is the embezzlement of union funds.

The court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that each of the foregoing essential elements of a violation of 18 U.S.C. § 371 was present with respect to Hanson.

The court makes the same preliminary observations as it did with respect to Daniels, *supra*. Because the court finds in this order, sections D and F, that a rational jury could return a verdict of guilty as to Hanson on the two substantive offenses underlying the conspiracy charge, the level of criminal intent necessary to support Count One has been demonstrated sufficiently to withstand a Rule 29 motion. The remaining questions are whether the government has produced sufficient

5

evidence of an agreement and of an overt act to convince a rational jury of Hanson's guilt beyond a reasonable doubt. The same evidence of control, suspiciously similar circumstances, and obstructive behavior that supported the court's ruling on Daniels could support a rational jury's finding of guilt with respect to Hanson. If a rational jury could conclude beyond a reasonable doubt that Daniels conspired with Hanson, a rational jury could surely conclude that Hanson conspired with Daniels. The same "overt act" evidence – Hanson signing the allegedly fraudulent paychecks to Daniels – also applies. Hanson's motion for judgment of acquittal is **DENIED** with respect to Count One.

**C.     COUNT TWO: Charging Jesse Lee Daniels, Sr., with Embezzling Union Funds to His Own Use.**

Count Two charges the defendants with embezzling approximately $19,500 in union funds to Daniels's use in violation of 29 U.S.C. § 501(c). To find Daniels guilty of Count Two, the jury would have to find the following elements beyond a reasonable doubt:

> (1) that Daniels embezzled, stole, or unlawfully and willfully abstracted or converted to his own use;
> (2) the moneys, funds, securities, property, or other assets;
> (3) of a labor organization engaged in an industry affecting commerce;
> (4) of which Daniels was an officer or employee;[3] and
> (5) that Daniels acted with "fraudulent intent."[4]

Before trial, the parties stipulated to the third and fourth elements. The dispute before the jury is over elements (1), (2), and (5). Simply put, the jury is tasked with deciding whether Daniels

---

[3] *See United States v. Gibson*, 675 F.2d 825, 828 (6th Cir. 1982) (listing elements (1)-(4) as the "essential elements" of a § 501(c) case).

[4] *United States v. Floyd*, 882 F.2d 235, 240 (7th Cir. 1989) (noting, after collecting authorities, that "[a] common thread running through all these tests is whether the defendant acted with fraudulent intent[,]" and that "fraudulent intent is the cornerstone of a § 501(c) violation") (citing *United States v. Durnin*, 632 F.2d 1297, 1300 (5th Cir. 1980)); *cf. United States v. Duff*, 529 F.Supp. 148, 152 (N.D. Ill. 1981) (a valid § 501(c) indictment will allege fraudulent intent, leaving the question of authorization as an evidentiary factor).

took union money for his own use with fraudulent intent. There is little doubt, and the government has presented abundant evidence, that Daniels accepted checks beyond the monthly salary amount allotted to him by the August 11, 2005, "T-Bill" instituting executive board pay rates to conform with by-laws scales. [Government Exhibit 10 (referred to throughout as "2005 rate sheets")]. The dispositive issue is whether the government present sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Daniels accepted those payments with fraudulent intent.

Fraudulent intent, or "intent to defraud," as a scienter, means that the act charged was done knowingly with the intent to deceive or cheat a victim in order to cause a gain to the defendant and/or a loss to another. *See United States v. Snow*, 670 F.2d 749, 753 (7th Cir. 1982) (collecting authorities defining "intent to defraud"). To determine whether a defendant acted with fraudulent intent, the jury should consider the "totality of the circumstances." *Floyd*, 882 F.2d at 240. For example, "authorization or lack thereof is pertinent to a determination of the defendant's intent, as is whether the defendant possessed a good faith belief that the union would benefit from the appropriation." *Id*. But "authorization (or lack of) for the act is *but one factor* bearing on intent, as is proof that the union reaped no benefit from the act[,]" and other relevant evidence may and should be considered. *Id*.

The government presented evidence sufficient for a rational jury to find beyond a reasonable doubt that Daniels embezzled union funds to his own use with fraudulent intent. As mentioned, Agent Legan testified as to pretrial statements Daniels made to him during the course of his investigation. Daniels told Agent Legan that he knew he was receiving union funds in violation of the 2005 rate sheets. To counter this, the defense argues what the court considers a factual issue regarding the validity of the 2005 rate sheets themselves. If the rate sheets were invalid, Daniels

7

argues, then the fact that he was aware he was paid in excess of them does not support a finding of fraudulent intent. This argument is a non-starter. The defense is correct that the jury heard (and saw) evidence that the rate sheets may not have been passed with the proper procedures for an amendment to the local union's bylaws. But the jury *also* heard testimony, particularly through government witness Jerry Brooms, that the rate sheets could be properly passed by the membership as a generic expense. And additional government witnesses testified that this was done. In deciding a Rule 29 motion, the court's task is not to weigh the evidence or to resolve factual disputes. It is to assess whether the evidence the government *has* produced, viewed in the light most favorable to the prosecution, is sufficient to support a conviction. Here, the government's evidence is sufficient to persuade a rational jury that the 2005 rate sheets were properly authorized by the union membership, and that is as deep an inquiry as the law requires. *Blassingame*, 197 F.3d at 284.

Thus, a rational jury could conclude that the 2005 rate sheets were the most recent properly authorized executive board pay scale, and that Daniels knew he was accepting excess payments. Daniels further told Agent Legan that he knew his excess payment was not brought before the union membership as it should have been. Daniels told Agent Legan he was not sure whether the union would have approved his arrangement, if actually confronted with it. On top of it all, Daniels was the local union's Financial Secretary, a position tasked with considerable oversight responsibilities relating to union expenditures. A rational jury could confront this evidence – evidence of a man in a position to control Local 1011's finances taking additional payments he *knew* were not authorized by the most recent rate sheets, and failing to submit those payments to the membership for proper authorization out of fear they would not approve – and conclude that Jesse Daniels performed the acts charged in Count Two with fraudulent intent. Accordingly, Daniels's motion for judgment of

acquittal is **DENIED** with respect to Count Two.

**D.     COUNT TWO: Charging Loren Hanson with Embezzling Union Funds to Jesse Daniels's Use.**

As mentioned, Count Two charges the defendants with embezzling approximately $19,500 in union funds to Daniels's use in violation of 29 U.S.C. § 501(c). To find Hanson guilty of Count Two, the jury would have to find the following elements beyond a reasonable doubt:

> (1) that Hanson embezzled, stole, or unlawfully and willfully abstracted or converted to Daniels's use;
> (2) the moneys, funds, securities, property, or other assets;
> (3) of a labor organization engaged in an industry affecting commerce;
> (4) of which Hanson was an officer or employee; and
> (5) that Hanson acted with "fraudulent intent."

As was the case with Daniels, the dispute before the jury is over elements (1), (2), and (5), and the jury is tasked primarily with deciding whether Hanson embezzled union money for Daniels's use with fraudulent intent. For the purposes of the motion *sub judice*, this is not a difficult issue.

Hanson was the president of Local 1011 during the charged time period, and various evidence was introduced showing that, as president, he took a hands-on approach to managing local union finances. Eddie Gonzalez, the nominal treasurer for several years of Hanson's presidency, testified that Hanson himself prepared the "treasurer's report" listing expenses. Government witness Phil Moore testified that defendant Hanson himself *drafted* the 2005 rate sheets, and despite Hanson's argument regarding mistakes contained therein, a rational jury is certainly entitled to draw the inference that the drafter of the document knew what it said.

Evidence was also introduced that supports Hanson's knowledge that Daniels was being payed in excess of the 2005 rate sheets, and even that Hanson was one of the primary persons making that happen. For example, Government's Exhibit 14 shows Hanson signing successive

9

checks to Daniels on December 1, 2005, and December 15, 2005, for $313.25, the sum Daniels typically netted on his paychecks after withholding. [*See* Check Nos. 21567 and 21652]. There are many such instances in the record, and Hanson's signature is credible evidence demonstrating his knowledge that Daniels was receiving at least $626.50 per month, a sum greater than the $500.00 allowed him under the 2005 rate sheets.

Finally, government witnesses – including former local union trustee Ken Matusiak and union official Bill Jones – testified that Hanson was obstructive when other union officials inquired into specific payroll matters or proposed performing internal audits. While the defense to some extent impeached the testimony of these witnesses, the court's task in deciding the present motion is not to judge credibility. The court's task is to decide whether a rational jury that *does* choose to credit the evidence previously recited could find beyond a reasonable doubt that Hanson embezzled funds to Daniels's use with fraudulent intent. *Blassingame*, 197 F.3d at 284. Plainly, a rational jury could reach that result, and Hanson's motion for judgment of acquittal is **DENIED** with respect to Count Two.

**E.     COUNT THREE: Charging Jesse Lee Daniels, Sr., with Embezzling Union Funds to Loren Hanson's Use.**

Count Three charges the defendants jointly with embezzling approximately $21,450 union funds to Hanson's use in violation of 29 U.S.C. § 501(c). To find Daniels guilty of Count Three, the jury would have to find the following elements beyond a reasonable doubt:

>   (1) that Daniels embezzled, stole, or unlawfully and willfully abstracted or converted to Hanson's use;
>   (2) the moneys, funds, securities, property, or other assets;
>   (3) of a labor organization engaged in an industry affecting commerce;
>   (4) of which Daniels was an officer or employee; and
>   (5) that Daniels acted with "fraudulent intent."

Before trial, the parties stipulated to the third and fourth elements. The dispute before the jury is over elements (1), (2), and (5). The jury is tasked with deciding whether Daniels embezzled union money to Hanson's use with fraudulent intent.

Testimony was introduced that Daniels was the local union's Financial Secretary from 1994 to 2009 and that he actively fulfilled that role. Both the local union bylaws and various testimonial evidence could support the conclusion that, as Financial Secretary and a member of the Executive Board, Daniels had access to, control of, and responsibility for union financial records and expenditures. Local 1011 financial records included the check registers and treasurer's reports circulated at Executive Board meetings, as well as the union's "cash book" and payroll documentation. Some of these documents, specifically payroll and withholding sheets included in Government's Exhibit 12, showed that the gross figure Hanson was receiving in salary was two times the amount authorized by the 2005 rate sheets. Since Daniels's statements to Agent Legan show that he was aware of the executive pay rates authorized by the 2005 rate sheets, a rational jury could infer that Daniels was aware, by virtue of review of these documents and others to which he had access, that Hanson was being paid in excess of the authorized rate.

Furthermore, government witnesses, including former trustee Ken Matusiak, testified that Daniels, like Hanson, made it difficult for other union officers to gain meaningful access to financial records for the purpose of conducting an internal audit. This could support the inference not only that Daniels knew Hanson was overpaid, but that he wanted to keep those overpayments concealed from the union membership. Finally, documentary evidence was introduced that could support a jury's conclusion that Daniels did not merely *tolerate* Hanson's overpayment. He actively took part in it by signing and issuing Hanson's payroll checks, during the time period encompassed by the

charges, pursuant to his authority as a financial officer of the local union. A rational jury could find, based on the foregoing, that Daniels participated in paying Hanson in excess of the most recent authorized rates, and that he did so with fraudulent intent. As a result, his motion for judgment of acquittal is **DENIED** with respect to Count Three.

F.     **COUNT THREE: Charging Loren Hanson with Embezzling Union Funds to His Own Use.**

As mentioned, Count Three charges the defendants with embezzling approximately $21,450 union funds to Hanson's use in violation of 29 U.S.C. § 501(c). To find Hanson guilty of Count Three, the jury would have to find the following elements beyond a reasonable doubt:

(1) that Hanson embezzled, stole, or unlawfully and willfully abstracted or converted to his own use;
(2) the moneys, funds, securities, property, or other assets;
(3) of a labor organization engaged in an industry affecting commerce;
(4) of which Hanson was an officer or employee; and
(5) that Hanson acted with "fraudulent intent."

By now, the path the court's analysis must take is a familiar one, and familiar evidence supports denying Hanson's motion for judgment of acquittal with respect to Count Three. Just as testimony that Hanson himself drafted the 2005 rate sheets could support the inference that he was aware of the pay rate those sheets authorized for Daniels, it could support the inference that he was aware of the pay rate those sheets authorized for himself. And a rational jury could certainly find that Hanson knew *he* was receiving more than the sheets allowed. Furthermore, in addition to all the potentially suspicious and obstructive behavior noted in the court's discussion of Hanson's motion with respect to Count Two, both testimonial and documentary evidence was introduced which shows that Hanson began to receive his pay in zeroed-out checks at exactly the time when the 2005 rate sheets were passed and his compensation began to outstrip the amount that was visible to

membership. The defense may certainly argue that this was a mere coincidence, rather than suspicious or deceitful behavior, but the jury is not obligated to believe it. A rational jury could find, based on the foregoing, that Hanson accepted payments (or paid himself) in excess of the most recent authorized rates, and that he did so with fraudulent intent. As a result, his motion for judgment of acquittal is **DENIED** with respect to Count Three.

## CONCLUSION

For the reasons stated herein, the court now **DENIES** Jesse Daniels's motion for judgment of acquittal in its entirety. The Court also **DENIES** Loren Hanson's motion for judgment of acquittal in its entirety.

SO ORDERED.

ENTERED:  February 2, 2012 


 /s/ JON E. DEGUILIO 
Judge
United States District Court